STATE of Missouri, Respondent,

v.

Kevin GIBSON, Appellant.

Nos. 57091, 58192.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 5, 1991.

Judith LaRose, Columbia, for appellant.

William L. Webster, Atty. Gen., David J. Hansen, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

Kevin Gibson appeals from his convictions, after a jury trial, on one count of second degree burglary, Section 569.170, RSMo 1986, and one count of stealing over $150.00, Section 570.030, RSMo 1986. Additionally, Gibson appeals the dismissal without an evidentiary hearing of his Rule 29.15 motion for post-conviction relief. We have consolidated Gibson's two appeals, pursuant to Rule 29.15(*l*). We affirm.

The evidence adduced at trial in the light most favorable to the verdict is as follows. Marjorie and Henry Olfe owned and operated a business, Sunset Aquatech Pools. Sometime between approximately 7:30 p.m. on June 28, 1988, and 8:00 a.m. on June 29, 1988, the money in the cash register, totaling $160.94, and a small, beige, steel cash box, containing approximately $240.00 and some new penny holders, were taken from the store.

Around 3:20 a.m., June 29, 1988, James Schomake woke up to the sound of someone running outside his bedroom window. Schomake looked out the window, and saw someone standing by a tree, approximately 20 feet away, urinating on the ground. Initially, Schomake observed the man trying to hide behind the tree from a passing car. Schomake then observed the man join another person. Schomake watched as they both tried to gain access to a neighbor's vehicle. Schomake phoned the police and told them what he had observed. Schomake later observed the two men peering through the neighbor's basement window. Schomake again phoned the police.

Officer Terry Hinds, a police officer with the City of Sunset Hills, responded to Schomake's phone calls at approximately 3:27 a.m. on June 29, 1988. Hinds parked his car near Sunset Aquatech Pools. He saw two individuals standing behind a tree. Hinds identified Gibson as one of the two men standing behind the tree.

Hinds observed something in Gibson's hand. Due to poor lighting conditions, Hinds was unable to determine what Gibson was holding. Fearing that Gibson may have been holding a firearm, Hinds spotted his flashlight on the men, and identified himself as a police officer. Both men turned toward Hinds, which allowed Hinds to "easily identify them". The men subsequently turned and ran. Hinds ordered Gibson to halt or he would shoot. At that time, Gibson dropped a small, beige, steel cash box which contained some rolled coins. Hinds identified State's Exhibit No. 2 as the box the Sunset Hills police seized from Gibson. Gibson had two dollars and some change on his person when he was arrested. Additionally, there was approximately $45.64 in the cash box that the police seized.

James Schomake watched as the police apprehended Gibson and his accomplice. Schomake identified Gibson as the person who was urinating on his lawn.

Both James and Marjorie Olfe subsequently identified the State's Exhibit No. 2 as the cash box missing from their store. Marjorie Olfe also testified that the penny holders that were found inside Exhibit No. 2 were the penny holders that were in the cash box the night that it was taken from the their store. Neither James nor Marjorie Olfe gave anyone permission to take the cash box or the cash from their cash register between June 28 and June 29, 1988.

The trial court overruled Gibson's motion for acquittal at the close of the State's evidence. Thereafter, Gibson presented two witnesses in his defense. One witness, Police Officer Ronald Oldani testified that he saw no signs of forced entry at Sunset Aquatech Pools. Nevertheless, the court overruled Gibson's motion for acquittal at the close of all evidence. At that time, the State requested a motion in limine to preclude Gibson from referring to Kevin Fryman in his closing argument. The court sustained the motion. The jury subsequently convicted Gibson of one count of second degree burglary, Section 567.170, RSMo 1986, and one count of stealing over $150.00, Section 570.030, RSMo 1986.

Two days later, on May 25, 1989, Gibson entered a plea of guilty to an unrelated charge of second degree burglary. Additionally, he pled guilty to an unrelated charge of stealing under $150.00.

On July 21, 1989, the trial court sentenced Gibson, as a prior offender, to seven years imprisonment on each count, the sentences to run concurrently. The trial court ordered both sentences to run consecutively to Gibson's probation revocation. Additionally, the trial court sentenced Gibson to: (1) seven years for the unrelated charge of second degree burglary; and (2) six months for the unrelated charge of stealing under $150.00. The trial court ordered Gibson to serve both of these sentences concurrently with the two seven year sentences imposed in the case at bar, and consecutively with Gibson's probation revocation. The court also entered a $46.00 judgment against Gibson, pursuant to the Victims Compensation Act. The court explained that the $46.00 would be taken from funds that he earned at the Missouri Department of Corrections.

Gibson filed his notice of appeal regarding the charges in this case on July 31, 1989. Gibson filed his transcript on appeal on October 30, 1989. Additionally, Gibson filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15, alleging ineffective assistance of counsel. The motion court denied Gibson's motion, without an evidentiary hearing, as untimely in that it was filed more than thirty days after the transcript was filed. Rule 29.15(b). Gibson filed his notice of appeal on April 12, 1990. We have consolidated Gibson's two appeals, pursuant to Rule 29.15(*l* ).

Gibson's first point on appeal is that the trial court erred in: (1) overruling his motion for a judgment of acquittal at the close of all the evidence; and (2) accepting the jury's verdict of second degree burglary and stealing. Gibson argues that the evidence was insufficient to prove beyond a reasonable doubt that: (1) Gibson unlawfully entered Sunset Aquatech Pools with the purpose of stealing; or (2) that Gibson took U.S. currency and a metal cash box of a value of at least $150.00. As a basis for these arguments, Gibson contends that there was no evidence that: (1) he or anyone else forcibly or unlawfully entered Sunset Aquatech Pools; or (2) he had a key to Sunset Aquatech Pools. Gibson further contends that the State failed to prove that the cash box entered into evidence unequivocally belonged to Henry and Marjorie Olfe.

When reviewing the sufficiency of the evidence to support a criminal conviction, we: (1) view the evidence in the light most favorable to the State; (2) give the State the benefit of all reasonable inferences to be drawn from the evidence; and (3) disregard any contrary evidence and inferences. *State v. Spiller,* 778 S.W.2d 825, 826 (Mo.App.1989). Since the verdict in this case rests on circumstantial evidence, the facts and circumstances upon which the State relies must be consistent with each other, and with the State's hypothesis of Gibson's guilt. *State v. Rodden,* 728 S.W.2d 212, 213 (Mo. banc 1987). The evidence must be inconsistent with any reasonable theory of appellant's innocence. *Id.* The circumstances need not, however, be absolutely conclusive of guilt, nor must they demonstrate the impossibility of innocence. *Id.* The mere existence of other possible hypotheses is not sufficient to remove the case from the jury. *Id.*

To establish a case against Gibson for second degree burglary, the State had to prove that Gibson knowingly entered unlawfully, or knowingly remained unlawfully, in a building for the purpose of committing a crime therein. Section 569.170, RSMo 1986. To establish a case against Gibson for stealing over $150.00, the State had to prove that Gibson appropriated another's property with the purpose of depriving the person of their property without their consent. Section 570.030, RSMo 1986.

Viewing the evidence in the light most favorable to the State, the State proved that between approximately 7:30 p.m. on June 28, 1988, and 8:00 a.m. on June 29, 1988, the money in Sunset Aquatech Pools' cash register, totaling $160.94, and a small, beige, steel cash box, containing approximately $240.00 and some new penny holders, were taken from the store. Moreover, the State proved that neither James nor Marjorie Olfe gave anyone permission to take the cash box or the cash from their

cash register. Gibson argues that this evidence is insufficient because the State did not present evidence that Gibson entered the Olfe's building. Gibson's argument is without merit.

It is a well established rule in Missouri that an inference of guilt is permissible from the unexplained possession of property recently stolen in a burglary. *State v. Chunn*, 701 S.W.2d 578, 583 (Mo. App.1985). The inference exists as to both the burglary and the stealing. *Id.* Moreover, such evidence is sufficient to support a submission of both the burglary and the stealing to the jury. *Id.*

The evidence established that Gibson was in unexplained possession of Marjorie and Henry Olfe's property—a cash box containing some rolled coins. From that proof, it is permissible to infer Gibson's guilt. *State v. Chunn, supra*, 701 S.W.2d at 583. This inference exists as to both the burglary and the stealing. *Id.* Furthermore, such evidence supports a submission of both the burglary and the stealing to the jury. *Id.*

Gibson, however, argues that he only had two dollars and some change on his person when he was arrested. He additionally argues that there was only $45.64 in the cash box the police seized. Gibson therefore contends that there was insufficient evidence to establish that he was in possession of $150.00. Gibson's contention is without merit. Possession of some of the property stolen supports an inference of theft of all of it. *State v. Baker*, 676 S.W.2d 900, 901 (Mo.App.1984). Thus, the evidence that Gibson was in possession of the cash box which contained penny holders, is sufficient to support the inference that he stole all of the property taken.

Finally, the evidence was sufficient to convict Gibson. We have previously determined that evidence of a defendant being found less than half a mile from the scene of the crime, no more than 40 minutes after the crime occurred, running from a police officer was sufficient evidence to support a conviction for second degree burglary and stealing more than $150. *State v. Gorka*, 782 S.W.2d 718, 719 (Mo.App.1989). This determination is applicable to the case at bar. Both Schomake and the police saw Gibson near the crime scene, less than eight hours after the Olfe's locked Sunset Aquatech Pools for the evening. Gibson was carrying some property stolen from Sunset Aquatech Pools. Finally, when Hinds turned his flashlight on Gibson, Gibson ran. This strong circumstantial evidence was sufficient both to submit the case to the jury and for the jury to conclude Gibson was guilty.

In his second point on appeal, Gibson asserts the trial court erred in granting the State's motion in limine, thereby precluding Gibson from referring to Kevin Fryman in closing argument. Gibson supports this claim by arguing that the State initiated the use of Fryman's name and thereafter tried to establish that Fryman was an accomplice in the charged crimes. However, when Gibson wanted to refer to Fryman, he was denied the opportunity to do so, thereby precluding him from addressing the State's allegations.

A trial court has broad discretion to control closing arguments. *State v. Hillis*, 748 S.W.2d 694, 696 (Mo.App.1988). An appellate court will not disturb the trial court's ruling unless an abuse of discretion resulted in prejudice to the defendant. *Id.*

In the case at bar, neither Gibson nor the State cite a case where both parties refer to a person, other than the defendant, who had an opportunity or motive for committing the crime for which the defendant is on trial, and then, at the close of all evidence, the State requests a motion in limine to prevent either party from referring to said person. Moreover, we were unable to locate a case where this scenario occurred. Ordinarily, an objection to the admission of evidence is waived where the same or similar evidence has been elicited or introduced by the objector. *Alvey v. Sears, Roebuck and Company*, 360 S.W.2d 231, 234 (Mo.1962). In the case at bar, defense counsel could have argued that it was the State that first introduced evidence about Fryman. Based on this fact alone, the State waived its objection. However,

neither defense attorney argued this before the court. Instead, one of the defense attorneys indicated that the only reason defense counsel would refer to Fryman was to mention him as somebody who might have a key. The court then granted the State's motion, presumably on the ground that evidence that another person had an opportunity or motive to commit the crime is inadmissible absent a foundation that the third person committed some act directly connected with the crime. *State v. Williams*, 575 S.W.2d 838, 840 (Mo.App. 1978). The court must have concluded that neither party directly connected Fryman with the crimes.

■ While we do not condone the State's conduct in using arguments about Fryman to its advantage and then objecting to the use of such evidence, thereby precluding defense counsel from addressing the merits of the State's arguments, we will only disturb a trial court's ruling if an abuse of discretion resulted in prejudice to the defendant. *State v. Hillis, supra,* 748 S.W.2d at 696. Moreover, error, which in a close case might call for reversal, may be disregarded as harmless when the evidence of guilt is strong. *State v. Mantia,* 748 S.W.2d 785, 788 (Mo.App.1988).

First, the trial court's ruling did not amount to an abuse of discretion. Gibson's counsel indicated that the only reason that they would refer to Fryman was to mention him as somebody who might have a key. One of the defense attorneys directly questioned Marjorie Olfe regarding whether Fryman would have had a key. Moreover, this attorney questioned Marjorie Olfe at length about who had access to the keys to the store. The defense attorney thereby adequately suggested that Fryman, or any one of several store employees, could have obtained access to Sunset Aquatech Pools by use of a key on the night of the burglary. Further reference by defense counsel in closing argument would have been cumulative.

Second, the evidence of Gibson's guilt is strong. The police found Gibson near the scene of the burglary, carrying a small, beige, steel cash box which contained some rolled coins. When the police spotted Gibson, he ran, thus indicating a consciousness of guilt. Only a few hours later, the Olfes, whose store was located near to where the police found Gibson, reported that it had been burglarized. They reported that a small, beige, steel cash box, which contained some rolled coins was missing. Thus, because of the strong evidence of Gibson's guilt, we find no reversible error.

■ Finally, Gibson's third point is that the motion court erred in denying his Rule 29.15 motion for post-conviction relief without an evidentiary hearing. Specifically, Gibson alleges that the absolute deadline imposed by Rule 29.15(b) operated to deny him due process since the rule makes no provision for the late filing of a post-conviction motion for good cause shown. Gibson contends that he accidentally filed his *pro se* motion in the wrong court. Gibson further contends that "someone" at that court informed him that his motion would be forwarded to the correct circuit court and the date of receipt was not important.

Rule 29.15(b) states in pertinent part: A person seeking relief pursuant to this Rule 29.15 shall file a motion to vacate, set aside or correct the judgment or sentence substantially in the form of Criminal Procedure Form 40. If an appeal of the judgment sought to be vacated, set aside or corrected was taken, the motion shall be filed within thirty days after the filing of the transcript in the appeal pursuant to Rule 30.04.... Failure to file a motion within the time specified by this Rule 29.15 shall constitute a complete waiver of any right to proceed under this Rule 29.15.

The time limits contained in Rule 29.15 are both valid and mandatory. *Kilgore v. State,* 791 S.W.2d 393, 395 (Mo. banc 1990). Gibson filed his transcript on appeal on October 30, 1989. Therefore, pursuant to Rule 29.15(b), Gibson was required to file his *pro se* motion on or before November 29, 1989. Gibson did not file his *pro se* motion until December 7, 1989. Thus, since Gibson filed his *pro se* motion thirty-eight days after he filed his transcript,

Gibson waived his right to proceed under Rule 29.15.

For the reasons stated above, the convictions and the denial of the Rule 29.15 motion are affirmed.

REINHARD, P.J., and CRANE, J., concur.